FILED
2012 SEP 27  PM 4:41

SEALED
CASE UNSEALED PER ORDER OF COURT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. **12 CR 4030 IEG** |
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Sec. 371 - Conspiracy;<br>Title 18, U.S.C., Sec. 1343 - Wire Fraud; |
| WILLIAM ISON (1),<br>DOUGLAS ELLINGSON (2), | Title 18, U.S.C., Sec. 2 - Aiding and Abetting;<br>Title 18, U.S.C., Sec. 981(a)(1)(C); and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |
| Defendants. | |

The Grand Jury charges, at all times material to this Indictment:

### INTRODUCTORY ALLEGATIONS

1. Beginning no later than March 3, 2008, and continuing through at least August 2010, defendants WILLIAM ISON and DOUGLAS ELLINGSON were affiliated with Destiny's Partners ("DP"), an entity controlled by James Pantazelos (charged elsewhere), that received and bundled investor funds for purported investments.

2. Beginning no later than March 3, 2008, and continuing through at least February 2009, defendant ELLINGSON solicited investor funds for DP through his entity, Destiny's Partner's Ventures ("DPV"). Defendant ELLINGSON opened a bank account on behalf of DPV (AB9947) on March 3, 2008.

3. Beginning no later than June 2008, and continuing through at least November 2010, defendant ELLINGSON solicited investor funds through his entity, Capital Advancement Services ("CAS"), which he also operated under the name Capital Advancement Systems. Defendant ELLINGSON opened a bank account on behalf of CAS ("CAS I") (AB7889) on July 31, 2008.

CPT:nlv:San Diego
9/27/12



Defendant ELLINGSON opened a second bank account on behalf of CAS ("CAS II") (AB1512) on October 28, 2008.

4. Beginning no later than June 2008, and continuing through at least September 2009, defendant ISON solicited investor funds secured by his mining assets, including mining assets owned by his entity, Olathe Mining Company ("OMC"). Defendant ISON opened a bank account for OMC (BA6110) on September 10, 2008.

5. Beginning no later than August 29, 2008, and continuing through at least September 2009, defendant ISON was a partner of Blue Diamond Excavations, Inc. ("BDE"), a company that he claimed guaranteed investments made through OMC and defendant ELLINGSON's CAS.

6. Persons hereinafter identified as "R.J.," "C.J.," "J.A.," "M.A." and "B.E." are victim-investors who resided in San Diego County.

## Count 1
[18 U.S.C. § 371]
Conspiracy

7. The allegations set forth in paragraphs 1 through 6 above are realleged and incorporated by reference as if fully set forth herein.

8. Beginning no later than April 10, 2008, and continuing to at least September 4, 2012, within the Southern District of California and elsewhere, defendants WILLIAM ISON and DOUGLAS ELLINGSON, and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed together and with each other to commit offenses against the United States, that is:

a. to knowingly devise and intend to devise, with the intent to defraud, a material scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and to transmit and cause to be transmitted by means of wire and radio communication in interstate commerce any signs, signals, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and,

b. to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1957.

<u>Manner and Means of the Conspiracy</u>

9. In furtherance of the conspiracy, and to effect the objects thereof, defendants ISON and ELLINGSON utilized the following methods and means, among others:

    a. Defendants ISON and ELLINGSON made false representations and promises, via interstate wire and in person, to potential investors to induce interstate wire transfers of funds to the defendants' various bank accounts, including:

        i. that ISON was a CEO of a non-profit foundation;

        ii. that ISON's foundation gave $1 trillion annually to charity;

        iii. that past charitable efforts helped develop a cure for AIDS;

        iv. that investors' principal would be held in an escrow or reserve account;

        v. that investors' principal would be fully secured by ISON's mining assets;

        vi. that investors' principal would be guaranteed safe;

        vii. that investments produced profits of approximately 60% monthly, and as much as 500% in 90 to 120 days;

        viii. that investor funds would not be traded;

        ix. that investments would never produce a loss; and

        x. that ELLINGSON maintained complete control over funds invested through him.

    b. Defendants ISON and ELLINGSON paid prior investors phantom "returns" with funds received from newer investors, thereby turning their investment funds into "Ponzi schemes" and inducing prior investors to provide additional funds.

    c. Defendants ISON and ELLINGSON used investor funds for their own personal expenses, including vacations and personal investments.

    d. Defendants ISON and ELLINGSON conducted monetary transactions of over $10,000 of fraudulently-obtained investor funds through financial institutions, including cash withdrawals and transfers to various personal bank accounts.

    e. Defendants ISON and ELLINGSON sent "lulling" emails to investors that falsely promised the imminent return of their funds, in an attempt to dissuade investors from initiating lawsuits against them or contacting law enforcement authorities.

f. Using these and other fraudulent and deceptive practices, defendants ELLINGSON and ISON fraudulently solicited over $2.8 million of victim-investor funds between approximately July 2008 and December 2011.

## OVERT ACTS

10. In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed within the Southern District of California, and elsewhere:

   a. On or about April 10, 2008, defendant ELLINGSON made the following false representations to R.J., C.J., and J.A. during a solicitation pitch in Kona, Hawaii:

   i. that investors' principal would be held in a bank account and guaranteed safe; and,

   ii. that investors' investment profits would be used to fund charitable projects.

   b. On or about April 25, 2008, defendant ELLINGSON emailed victim J.A. with false and misleading information about "one of the two AIDS cures we have access to."

   c. On or about April 25, 2008, defendant ELLINGSON provided documentary materials to victim R.J. that represented investment programs are "'**without**' risk to the investor what-so-ever."

   d. On or about June 21, 2008, defendant ISON made the following representations to victim R.J. and others in Chicago, Illinois, in the presence of defendant ELLINGSON:

   i. that he was the CEO of a non-profit organization that donated $1 trillion annually to humanitarian causes;

   ii. that his foundation funded projects through the Department of Homeland Security;

   iii. that his foundation donated $200 billion intended for Hurricane Katrina victims;

   iv. that his foundation had access to cures for AIDS;

   v. that he owned a gold mine worth $2.75 trillion; and,

   vi. that the assets of his gold mine could secure notes to insure investors' principal.

e. On or about August 2, 2008, defendant ISON made the following representations to potential investors in Dallas, Texas:

    i. that his foundation, in conjunction with another foundation, gave $3 trillion annually to charities through a Panamanian trust and tax haven;

    ii. that his foundation donated hundreds of billions of dollars for funding of Department of Homeland Security port operations;

    iii. that his foundation donated $200 billion intended for Hurricane Katrina victims;

    iv. that his foundation had a cure for HIV and other major viruses;

    v. that he had access to various credit lines because he owned significant mining assets that produced gold, silver, and platinum; and,

    vi. that investments usually produced profits "around 60% per month."

f. On or about August 28, 2008, defendant ELLINGSON emailed written materials to victims J.A. and R.J. that included the following misrepresentations:

    i. that CAS maintains complete control of any deposits made for investment purposes, for the entire contract term.

    ii. that investments in CAS were used to fund annual contributions by defendant ISON's foundation to humanitarian aid "well in excess of $1 trillion;"

    iii. that CAS would not enter a trade transaction unless it first ensured it had a customer to purchase its "bank debentures;"

    iv. that investor funds would be held in an escrow account;

    v. that investor funds would be used as collateral to obtain a loan;

    vi. that investor funds would not be traded; and

    vii. that investments in CAS would never produce a loss.

g. On or about August 29, 2008, defendant ISON emailed defendant ELLINGSON that ISON had become a partner of BDE, and that information regarding OMC "will prove the assets to back the principal funds."

h. On or about September 2, 2008, defendant ELLINGSON wire-transferred $209,250 of new investor funds from his CAS I account to victim R.J., which was equivalent to earlier DPV investments by R.J. and other investors, plus a 35% rate of return. By making this payment,

1  ELLINGSON caused R.J. to wire-transfer $100,000 to ELLINGSON's CAS I account on or about
2  September 5, 2008.

3      i.    On or about September 5, 2008, defendant ELLINGSON acknowledged via email
4  victim R.J.'s one-year investment.

5      j.    On or about September 16, 2008, defendant ELLINGSON wire-transferred
6  $400,000 of investor funds from his CAS I account to ISON's OMC account, which included at least
7  part of victim R.J.'s funds received on September 5, 2008.

8      k.    On or about September 18, 2008, defendant ISON wire-transferred $400,000 from
9  his OMC account to an account for Sundial Investment Group, LLC (BA6261) in Maryland, and not into
10 a reserve account or for use as collateral for a loan.

11     l.    On or about September 19, 2008, defendant ISON instructed defendant
12 ELLINGSON via email to tell victim-investors that OMC obtained medium-term notes that were secured
13 by ISON's assets, consisting of precious metals futures. ISON further instructed ELLINGSON to tell
14 victim-investors that ISON operated an investment program "that generates a 500% return in 90 to 120
15 days." ISON told ELLINGSON, however, that he did not want victim-investors to know exactly what
16 he was trading, "because in reality it changes every week."

17     m.    On or about October 8, 2008, the defendants caused victim R.J. and his wife C.J.
18 each to wire-transfer $50,000 to ELLINGSON's CAS I account.

19     n.    On or about October 14, 2008, defendant ELLINGSON wire-transferred $13,500
20 to prior investor G.W., and misrepresented the payment as a return on G.W.'s prior investment, when
21 in fact the money had come from new investor funds. Consequently, ELLINGSON caused victim G.W.
22 to wire-transfer an additional $10,000 to ELLINGSON on or about December 18, 2008.

23     o.    On or about October 28, 2008, defendant ELLINGSON drew a cashier's check
24 from his CAS I account for $250,000, all of which represented victim funds, and deposited the cashier's
25 check into his CAS II account.

26     p.    On or about November 14, 2008, defendant ELLINGSON drew a cashier's check
27 from his CAS I account for $250,000, all of which represented victim funds, and deposited the cashier's
28 check into his CAS II account.

  q. On or about January 27, 2009, defendant ELLINGSON wire-transferred $15,000 of new investor funds from his CAS II account to prior investor G.W., and again misrepresented the payment as a return on G.W.'s prior investment. Consequently, ELLINGSON induced G.W. to wire-transfer an additional $125,000 to ELLINGSON on or about February 24, 2009, and $30,000 on or about September 11, 2009.

  r. On or about March 19, 2009, defendant ELLINGSON caused victim R.J. and his wife C.J. to each wire-transfer $50,000 to ELLINGSON's CAS II account.

  s. On or about September 11, 2009, defendant ISON made the following representations, in the presence of defendant ELLINGSON, to undercover FBI agents posing as potential investors:

    i. that his investment programs had generated $500 billion over five years which was donated to humanitarian causes;

    ii. that his investment programs produced $200 billion for Hurricane Katrina victims;

    iii. that he and defendant ELLINGSON guaranteed investor funds with bonds written against ISON's "big mining company;" and,

    iv. that ISON's company had "literally billions of dollars worth of assets," including $250 billion in bonds.

  t. On or about September 11, 2009, defendant ELLINGSON falsely represented to undercover FBI agents posing as potential investors that he would "promise 60% [profit from investment] but they're gonna probably get, you know, seven, eight, ten times that."

  u. Between approximately March 2, 2009 and September 14, 2012, defendants ELLINGSON and ISON caused emails to be sent to victims promising imminent returns of their investments, thereby discouraging victims from reporting the fraudulent scam to authorities. The emails included the following:

    i. On or about March 2, 2009, ELLINGSON forwarded an email from ISON to victim R.J. and others in which ISON claimed he was attempting to find "replacement" funds for their initial investments.

    ii. On or about July 25, 2009, ISON emailed investors that their funds were not at risk because they were guaranteed by the medium-term note provided by BDE.

iii. On or about December 5, 2009, ELLINGSON emailed victim R.J. and others that he and ISON "are working daily at getting funds back to everyone that is due, and we are almost there."

iv. On or about March 27, 2010, ELLINGSON forwarded to victim R.J. an email from ISON in which ISON claimed he was continuing to look for "replacement funds" for the victims.

v. On or about April 9, 2010, ELLINGSON emailed victim R.J. and others in response to their requests for immediate return of their funds, and stated, "You agreed to trust us with your funds, I recommend that you continue to do so. Causing problems will only result in extended unhappiness for all concerned."

vi. On or about June 3, 2010, ISON emailed investors that "BDE and OMC continue to work on multiple project deals daily in order to obtain the replacement funds as per the guarantee to OMC from BDE and OMC's guarantee to yourself."

vii. ELLINGSON forwarded ISON's June 3, 2010 email to victim R.J. on June 6, 2010.

viii. On or about July 21, 2010, ISON emailed investors, "I still have BDE working on getting us the return of our principal and interest funds as per their initial guarantee."

ix. ELLINGSON forwarded ISON's July 21, 2010 email to victim R.J. on July 22, 2010.

x. On or about August 24, 2010, ISON emailed ELLINGSON that he would be completely released from legal responsibility because "the main group that OMC loaned funds to . . . stated that they are now going to take the responsibility to get everyone paid back with interest," which made sense "because I simply passed on the funds you loaned to OMC directly to them anyway."

xi. On or about December 31, 2010, ELLINGSON forwarded an email from ISON to investors explaining that "lenders" could expect to receive funds in January or February 2011, because "we just couldn't seem to get [the deals] completed for one reason or another . . . ."

xii. On or about November 11, 2011, ELLINGSON emailed investors that he was no longer counting on the original program.

xiii. On January 21, 2012, ELLINGSON emailed investors that the original "Treasury Deal" may still be viable after all.

xiv. On or about August 1, 2012, ELLINGSON emailed victim R.J. that his investment might still produce a return within a week.

xv. On or about September 14, 2012, ELLINGSON emailed victims R.J. and J.A. that funds paying back principal and interest would be coming in approximately three weeks.

All in violation of Title 18, United States Code, Section 371.

8

**Counts 2-15**
[18 U.S.C. §§ 1343, 2]
Wire Fraud

11. The introductory allegations set forth in paragraphs 1 through 6 above are realleged and incorporated by reference as if fully set forth herein.

12. Beginning no later than April 25, 2008 and continuing to at least March 19, 2009, within the Southern District of California, and elsewhere, defendants WILLIAM ISON and DOUGLAS ELLINGSON devised and intended to devise a scheme to defraud as to material matters and to obtain money by materially false and fraudulent pretenses, representations, and promises, as more fully described in paragraphs 9 and 10 of Count 1.

Execution of Material Scheme by Wire Communications

13. On or about the dates set forth below, within the Southern District of California, and elsewhere, defendants WILLIAM ISON and DOUGLAS ELLINGSON, for the purpose of executing the aforementioned material scheme to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, in interstate and foreign commerce, by means of wire, radio, and television communication, the writings, signs, signals, pictures, and sounds set forth below:

| Count | Date | Sender | Recipient | Communication |
|---|---|---|---|---|
| 2 | April 25, 2008 | ELLINGSON from Wisconsin | Victim J.A. in Vista, California | Email with information about "one of the two AIDS cures we have access to" |
| 3 | August 28, 2008 | ELLINGSON from Wisconsin | Victim J.A. in Vista, California | Email that investor funds would be held in an escrow account |
| 4 | August 28, 2008 | ELLINGSON from Wisconsin | Victim R.J. in San Diego, California | "CAS maintains complete control of any deposit(s) [for investment purposes] for the entire contract term." |
| 5 | September 5, 2008 | Victim R.J. from San Diego, California | ELLINGSON's CAS I account in Wisconsin | Interstate wire transfer of $100,000 |
| 6 | September 11, 2008 | Victim J.A. from Vista, California | ELLINGSON's CAS I account in Wisconsin | Interstate wire transfer of $10,000 |

| Count | Date | Sender | Recipient | Communication |
|---|---|---|---|---|
| 7 | October 8, 2008 | Victim R.J. from San Diego, California | ELLINGSON's CAS I account in Wisconsin | Interstate wire transfer of $50,000 |
| 8 | October 8, 2008 | Victim C.J. from San Diego, California | ELLINGSON's CAS I account in Wisconsin | Interstate wire transfer of $50,000 |
| 9 | October 29, 2008 | Victim M.A. from Oceanside, California | ISON's OMC account in California, via New York | Interstate wire transfer of $105,000 |
| 10 | November 20, 2008 | Victim M.A. from Oceanside, California | ISON's OMC account in California, via New York | Interstate wire transfer of $10,000 |
| 11 | December 15, 2008 | Victim B.E. from San Diego, California | ELLINGSON's CAS II account in Wisconsin | Interstate wire transfer of $100,000 |
| 12 | December 17, 2008 | Victim B.E. from San Diego, California | ELLINGSON's CAS II account in Wisconsin | Interstate wire transfer of $90,000 |
| 13 | March 19, 2009 | Victim R.J. from San Diego, California | ELLINGSON's CAS II account in Wisconsin | Interstate wire transfer of $50,000 |
| 14 | March 19, 2009 | Victim C.J. from San Diego, California | ELLINGSON's CAS II account in Wisconsin | Interstate wire transfer $50,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

[Criminal Forfeiture – 18 U.S.C. § 981(a)(1)(C); and 28 U.S.C. § 2461(c)]

14. Counts 1 through 14 are realleged and incorporated herein by reference as though set forth in full for the purpose of charging criminal forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).

15. As a result of the commission of the foregoing offenses alleged in Counts 1 through 14 of this Indictment, defendants WILLIAM ISON and DOUGLAS ELLINGSON shall forfeit to the United States any and all property, real and personal, which constitutes or is derived from proceeds traceable to those offenses.

16. In the event that any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses described in Counts 1 through 14 of this Indictment, as a result of any act or omission of the defendant:

      (1) cannot be located upon the exercise of due diligence;
      (2) has been transferred or sold to, or deposited with, third parties;
      (3) has been placed beyond the jurisdiction of the courts;
      (4) has been substantially diminished in value; or
      (5) has been co-mingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p).

All in violation of Title 18, United States Code, Section 981(a)(1)(C); and Title 28, United States Code, Section 2461(c).

DATED: September 27, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
CHRISTOPHER P. TENORIO
Assistant U.S. Attorney